**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JACK ALLEN,**

       **Petitioner,**

**vs.**

                               **CASE NO. 4:09cv85-MP/WCS**

**EDWIN G. BUSS, Secretary,
Florida Department of Corrections,[1]**

       **Respondent.**

_____/


**REPORT AND RECOMMENDATION**

       This is an amended petition for writ of habeas corpus filed by Jack Allen pursuant

to 28 U.S.C. § 2254.  Doc. 14 and 16 (supplement).  Petitioner challenges his conviction

for sexual battery in the Circuit Court of the Second Judicial Circuit, in and for Gadsden

County, Florida, case number 2005-CF-375.  *Id.*  Respondent filed an answer and the

record electronically and in paper form.  Doc. 22.  References herein to exhibits are to

---

       [1] Edwin G. Buss was appointed as Secretary of the Florida Department of
Corrections on February 14, 2011, and is substituted for Walter A. McNeil pursuant to
FED. R. CIV. P. 25(d).

the record in paper form.  Petitioner has not filed a traverse.  Respondent concedes that

the petition was timely filed.  Doc. 22, p. 11.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have

exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)."  O'Sullivan v.

Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly

exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented

to the state courts."  Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d

438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865

(1995) (citing Picard).  However, "[a]n application for a writ of habeas corpus may be

denied on the merits, notwithstanding the failure of the applicant to exhaust the

remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).[2]

If a claim was not fairly presented but is procedurally barred from further state

court review,[3] Petitioner must demonstrate cause for the default and actual prejudice, or

demonstrate that the constitutional violation has probably resulted in conviction of an

innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115

L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-

71, 113 L.Ed.2d 517 (1991).

---

[2] If no constitutional claims are raised, then §2254 is inapplicable and the exhaustion inquiry is irrelevant.  Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct. 1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

[3] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available."  The court therefore refers to "fairly presented" claims as having been properly exhausted, to distinguish them from claims exhausted by procedural default.  See O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

If the state court reached the merits of the federal claim, a petitioner is entitled to

federal habeas relief only if the state court's adjudication of the merits of the federal

claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

§ 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146  L.Ed.2d 389

(2000); Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125

(2000).  "If a claim has been adjudicated on the merits by a state court, a federal

habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was

before that state court."  Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1400 (2011);

Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004)

("[W]hether a state court's decision was unreasonable must be assessed in light of the

record the court had before it.").

Moreover, a federal court's authority to take new evidence is constrained.

> [A] determination of a factual issue made by a State court shall be
> presumed to be correct. The applicant shall have the burden of rebutting
> the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1); Fugate v. Head, 261 F.3d 1206, 1215 and n. 11 (11th Cir. 2001) (citation

omitted).

> If the applicant has failed to develop the factual basis of a claim in State
> court proceedings, the court shall not hold an evidentiary hearing on the
> claim unless the applicant shows that –
>
> (A) the claim relies on –

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;  or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;  and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 22564(e)(2).

For an ineffectiveness of counsel claim, the "clearly established" standard is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has a heavy burden, as he must show that "no competent counsel would have taken the action that his counsel did take."  Fugate, 261 F.3d at 1217 (citation omitted).  There are no rigid requirements or absolute duty to investigate a particular line of defense, and "more is not always better."  Id. (citations omitted).

Even if Petitioner can show deficient performance, he must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

**Ground One**

Petitioner contends that the state court erred by "failing to conduct an adequate Nelson inquiry."  Doc. 14, p. 4 (p. 5 on ECF, the electronic docket); attached memorandum, pp. 10-11 (pp. 18-19 on ECF), citing Nelson v. State, 274 So. 2d 256, 258 (Fla. 4th DCA 1973).  He asserts that on November 18, 2005, the trial court conducted a *Faretta*[4] hearing, and the court told Petitioner he could either go to trial with his current lawyer or represent himself.  *Id.*  In his memorandum, Petitioner states that at the November 18, 2005, hearing, he "expressed his dismay about defense counsel's performance and conflict [and] also the course of defense."  *Id.*, memorandum p. 8 (p. 16 on ECF).  Petitioner further alleges that on March 8, 2006, he "again informed the state court that there still existed a conflict of interest between petitioner and defense counsel."  *Id.*, p. 10 (p. 18 on ECF).  He alleges that on March 9, 2006, he filed a pro se motion to discharge his attorney because "counsel's performance had not improved."  *Id.*, p. 10 (p. 18 on ECF).

---

[4] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *Faretta* established the procedures by which a trial court determines whether to allow a defendant to dispense with counsel and represent himself.  "It is well-established that a defendant wishing to waive his right to counsel may do so by invoking his right to self-representation and confirming his knowing choice through a cooperative dialogue with the court." United States v. Garey, 540 F.3d 1253, 1257 (11th Cir. 2008). Petitioner makes no claim here that he was wrongly denied the right to represent himself.

Respondent argues that Petitioner fails to state a federal claim and, because he failed to present a federal claim in state court, failed to exhaust state court remedies. Respondent is correct.

Petitioner's allegations fail to present a constitutional claim in this court. To begin with, an alleged failure to conduct an adequate *Nelson* inquiry presents only a claim of violation of state law. A violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution. Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (procedural rule); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines); Carrizales v. Wainwright, 699 F.2d 1053, 1054-1055 (11th Cir. 1987) (jury instruction).

Nelson decided the question of "the procedure which the trial court should follow for the purpose of protecting an indigent's Sixth Amendment right to counsel in a criminal prosecution where before the commencement of the trial the Defendant moves to discharge appointed counsel." 274 So. 2d at 258. The court said that effective counsel was a Sixth Amendment right. *Id.* The court further said: "If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant." *Id.*, at 258-259. Petitioner's claim

here only faults the trial court for failing to conduct a sufficient inquiry as required by

Nelson, which is only a matter of state procedural law.[5]

Second, Petitioner has alleged nothing to show that he in fact was represented

by an ineffective attorney prior to trial, or that his attorney had a conflict of interest.  The

"clearly established" standard set forth in Strickland v. Washington, *supra*, is the

standard for an ineffectiveness claim.

Proof of ineffectiveness due to a conflict of interest follows a somewhat different

set of rules.  "In order to demonstrate a violation of his Sixth Amendment rights, a

defendant must establish that an actual conflict of interest adversely affected his

lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64

L.Ed.2d 333 (1980).  Counsel's conflict must be actual rather than possible or

hypothetical.  Buenoano v. Singletary, 74 F.3d 1078, 1086 (11th Cir.), *cert. denied*, 117

S.Ct. 520 (1996).  An "actual conflict" of interest occurs when a lawyer has "inconsistent

interests."   Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999).  A presumption

of prejudice arises only after a showing of "adverse effect," that "counsel refrained from

pursuing a reasonable, alternative defense strategy because of an actual conflict."  165

F.3d at 860.  Thus, state procedures aside, Petitioner has failed to allege a Sixth

Amendment claim under either Strickland or Cuyler.  Petitioner has not alleged that his

trial attorney committed either specific attorney error or caused specific prejudice to the

outcome.

---

[5] There is a significant difference between state procedures to resolve a federal
issue and the merits of the federal issue itself.

Petitioner's pleading deficiencies were equally manifest at the state level.  He never made a case for Sixth Amendment ineffectiveness.  He never identified any attorney error that caused actual prejudice to the outcome.  On November 17, 2004, Petitioner's attorney, James Webb, filed a motion alleging that Petitioner never saw his first and second lawyers, and he did "not wish to deal with yet another lawyer from the same office."  He sought a *Faretta* hearing.  Ex. A, R. 12-13 (doc. 22-2, pp. 24-25 on ECF).  At the hearing on November 18, 2005, Petitioner had a new lawyer, and he said that he did not feel "confident at this short time dealing with another lawyer."  Ex. B, p. 3 (doc. 22-3, p. 4 on ECF).  The court told Petitioner that James Webb was a "very capable lawyer."  *Id.*, p. 4 (doc. 22-3, p. 5 on ECF).  Petitioner later said that he just wanted to know what was going on because he had not talked with anyone since he had been put in jail.  *Id.*, p. 6 (doc. 22-3, p. 7 on ECF).  The court told Petitioner that he was entitled under the constitution "to have a lawyer that's prepared."  *Id.*  Petitioner never identified specific instances of ineffectiveness.

On March 6, 2006, Petitioner filed a motion to discharge counsel.  Ex. A, R. 15-17 (doc. 22-1, pp. 27-29 on ECF).  Petitioner said he had had no communication with his lawyer since the hearing on January 11, 2006, he had not received discovery materials, the lawyer had not deposed the victim, and the lawyer had not filed a notice of expiration of the speedy trial deadline.  *Id.*, R. 16 (doc. 22-1, p. 28 on ECF).  He asserted that his lawyer did not "appear to be interested" in performing as an effective attorney.  *Id.*  A hearing on this motion was conducted on March 8, 2006.  Ex. C, pp. 1-7 (doc. 22-3, pp. 13-19 on ECF).  Petitioner complained that his lawyer, Mr. Webb, had come to see several people at the jail the prior week, but did not see Petitioner, and

Petitioner was "still not satisfied with him." *Id.*, p. 5 (doc. 22-3, p. 17 on ECF).  He

argued that he had not waived speedy trial, but the court said that once the defense

moves for a continuance, speedy trial is waived.  *Id.*  Petitioner identified no other acts

or omissions of counsel to support a claim of ineffectiveness.

On March 14, 2006, Petitioner filed another motion to discharge his lawyer.  Ex.

A, R. 21-22 (doc. 22-1, pp. 33-34 on ECF).  Petitioner noted that at the March 6, 2006,

the court had persuaded him to keep James Webb as his lawyer.  *Id.*, R. 22 (doc. 22-1,

p. 34 on ECF).  He said it was "in his best interest" to discharge his lawyer.  *Id.*  A

hearing was held on the motion on April 19, 2006.  Ex. D, pp. 1-4 (doc. 22-3, pp. 21-24

on ECF).  Petitioner's attorney, Mr. Webb, said that Petitioner "would prefer to go ahead

and go on to trial." *Id.*, p. 2 (doc. 22-3, p. 22 on ECF).  The only thing that Petitioner

said was that he thought he deserved reduction of his bond.  *Id.*, p. 3 (doc. 22-3, p. 23

on ECF).  Petitioner did not identify any specific instances of ineffectiveness.

Thus, whether the court views this as a failure to state a federal claim before this

court, or a failure to state a federal claim in state court and thereby properly exhaust

state court remedies, ground one affords no relief.

**Ground Two**

Petitioner argues that his trial attorney was ineffective for failing to call "Reginal"

Allen as a witness.  Doc. 14, p. 4 (doc. 14, p. 5 on ECF).  For this claim, Petitioner

apparently relies upon the allegations he presented in his Rule 3.850 motion, which is

attached to his petition.

There he contends that "Reginal" or "Riginal"  [sic, Reginald] Allen wold have

testified that he saw the victim get out of Petitioner's car at about 3:00 a.m. in front of

"A.J.'s," a night club in Gadsden County.  Doc. 14, Rule 3.850 motion, p. 4 (doc. 14, p.

27 on ECF).  He contends this would have corroborated the testimony of Vickie Baker,

that the victim exited Petitioner's car at that time and place and Petitioner and another

person drove away "in a normal manner."  *Id.*  He also notes that this testimony would

have contradicted the victim's testimony, that she was unsure where she was in the car,

but jumped out of the car when Petitioner and co-defendant Hilton's car slowed down,

that her assailants did not try to pick her up again, but left her on the side of the road,

and that she walked and ran back to the club (A.J.'s) "in Shiloh."  *Id.*, p. 5 (doc. 14, p. 28

on ECF).  He contends that this would have shown that he had consensual sex with the

victim.  *Id.*

> In denying this Rule 3.850 claim, the trial court said:
>
> 2.  Defendant alleges he told his counsel that Mr. Reginal Allen would
> testify he saw Ms. G[] get out of Mr. Hilton Allen's car at 3:00 a.m. in front
> of AJ's.  He says this would have corroborated Ms. Vickie Baker who
> testified she saw Defendant and a driver let Ms. G [] out of their car at 3:00
> a.m. and drive away in a normal manner.  The issue was whether Ms. G[]
> had consensual sex with Defendant.  He states Ms. G[] testified that she
> jumped out of the car at one point and ran back to AJ's. The record refutes
> this last sentence. The trial testimony of Victim G[] is attached.
>
> 3.  Even assuming counsel was deficient in not calling Reginal Allen as a
> corroboration witness, as alleged by Defendant, the absence of such
> corroboration did not affect the verdict of guilt. This alleged testimony, at
> best, only tends to suggest a possible consensual encounter.  There is
> other compelling evidence which proved nonconsent.  This Court's
> confidence in the outcome of the procedure [sic] is not undermined by any
> alleged deficiency of trial counsel. See **Thompson v. State**, 990 So.2d
> 482, 488-89 (Fla. 2008).
>
> 4.  The Victim, 19- year old Ms. G[], knew both Defendants very well. (Jury
> Trial tr. 29-30).  On a deserted dark dirt road, Defendant Jack Allen said if
> you don't give it, I am going to take it, and he ain't putting up with the
> crying and stuff.  (Jury Trial tr. 35-36)  Co-defendant Hilton tore off her
> panties and jeans which were both ripped.  The ripped jeans were

introduced into evidence. (Jury Trial tr. 37-40) The panties and one sock were lost and never found.  (Jury Trial tr. 42-43, 67-68)  Hilton Allen then sexually assaulted her.  The Defendant Jack Allen sexually battered her. She struggled, but they held her down.  (Jury Trial tr. 55)  There were no cuts or bruises.  (Jury Trial tr. 57)  As to her trial demeanor, she cried during the testimony.  (Jury Trial tr. 40-42)  She thinks she got out of the car before AJ's and told Defendant's nephew, Reginald Allen, a/k/a "Bubba" what happened.  He took her to the store to call police, where she called 911.  (Jury Trial tr. 44, 58)  Hilton Allen is the uncle of Jack Allen (Jury Trial tr. 62)  Codefendant Hilton Allen told an officer they went from McDonald's straight back to AJ's.  He did not mention the dirt road [that the] Victim described where she was assaulted.  He denied assaulting the Victim. (Jury Trial tr. 63-64, 74)  Victim's demeanor at the scene of the store when officers responded to the 911 call was she that she looked like she had been crying and was shaking as she spoke.  (Jury Trial tr. 79-80)

5.  Defendant Jack Allen told the officer they drove down a dirt road and they talked about sex, but Victim was reluctant with Hilton Allen present, but then Hilton got out of the car, and she agreed to sex and took off her own clothes.  (Jury Trial tr. 65-66).

6.  Defense witness Vickie Baker testified that she was a friend of Defendant's, and there was a family connection, and that Victim had been a good friend of her daughter's and had lived with her for 6 months.  (Jury Trial tr. 124-127, 130)  At closing time at AJ's on May 9 she says she saw Victim around 3:00 a.m. and that "they", Defendants, put her out of the car.  (Jury Trial tr. 128-129)  She saw Victim walk into Reginald Allen's daddy's truck.  She did not talk to Victim at all.  (Jury Trial tr. 132)

7.  Defendant Jack Allen testified he had 2 prior consensual encounters with Victim before this accusation.  (Jury Trial tr. 139)  He testified the three went to McDonald's around 10:20-11:00 pm.  (Jury Trial tr. 144-45). Hilton Allen drove where Jack said to drive and they ended up on a dirt road, talked sex, Hilton got out, Vicitm [sic] took off her clothes, he took off his clothes, all clothes were put on the trunk of the car, they had sex for 5-10 minutes, and then she reached around for her clothes and put them on. (Jury Trial tr. 147-151)  He thought they got back to AJ's around 1:15 (Jury Trial tr. 155).  At the time, victim was 18 and Defendant was 45.  He characterized this as normal street life.  (Jury Trial tr. 155-156)  Hilton Allen testified similarly.  Hilton Allen was 57 years old at the time.  He lied to Lt. Corder about not knowing or seeing anything because his nephew was married and he loves him.  (Jury Trial tr. 167-169, 171-172)  Both Defendants were found guilty.  (Jury Trial tr. 238)

8. In sum, the torn Capri pants, absence of panties, Victim's trial demeanor, Victim's lack of motive to falsely claim rape against both men, Victim's immediate 911 call, the responding officer's observation of Victim crying and shaking at the scene, and the conflicting stories to law enforcement made by Defendants, make Reginald Allen's testimony inconsequential as to his own observations of Victim, when she was dropped off at AJ's, especially since he was related to Defendants.

Ex. K, R. 10-11 (doc. 22-6, pp. 13-14 on ECF).

All of these findings are supported by the trial record cited and attached to the order.  Trial record, excerpts of pp. 29-172 (doc. 22-6, pp. 44-131, doc. 22-7, pp. 1-56). As explained earlier, Petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim has "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d).  Petitioner has not carried the day as to this issue. The victim's torn and missing clothing is strong evidence of rape.  Further, her lack of motive to falsely claim rape, her demeanor when the responding officer arrived, her trial demeanor, and the conflicting stories that Defendant and his uncle told the police, made any testimony that might have been given by Reginald Allen inconsequential.

Moreover, Reginald Allen would have confirmed the victim's demeanor that evening after she left Petitioner's car because Reginald Allen was the one who immediately took her to make a call to the police.  Neither attorney error nor prejudice to the outcome was shown in state court.  As a consequence, Petitioner has not shown that the state court's denial of the claims in his Rule 3.850 motion has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254.

**Certificate of Appealability**

Case No. 4:09cv85-MP/WCS

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties may make argument as to whether a certificate should issue by filing objections to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Jack Allen pursuant to 28 U.S.C. § 2254 challenging  his conviction for sexual battery in the Circuit Court of the Second Judicial Circuit, in and for Gadsden County, Florida, case number 2005-CF-375, be **DENIED WITH PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on May 25, 2011.

**s/     William C. Sherrill, Jr.**

**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.